

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-25-19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHEN WALSH,

                Petitioner,

-against-

UNITED STATES OF AMERICA,

                Respondent.

9 Cr. 722 (LAP)
17 Civ. 6651 (LAP)

MEMORANDUM AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Petitioner Stephen Walsh ("Petitioner") seeks a writ, pursuant to 28 U.S.C. § 2255, challenging his April 25, 2014 sentencing following a guilty plea in the United States District Court, Southern District of New York. (Motion For Relief Pursuant To 28 U.S.C. § 2255 On Behalf Of Stephen Walsh ("Pet. Mot."), dated Aug. 30, 2017 [dkt. no. 249].) Petitioner pleaded guilty to one count of securities fraud. (Apr. 25, 2014 Plea Hearing Transcript ("Plea Tr."), dated Jan. 8, 2019 [dkt. no. 249-1], Ex. A at 6). Based on Petitioner's plea, Judge Miriam Goldman Cedarbaum sentenced Petitioner to a term of 20 years' imprisonment, followed by 3 years' supervised release, and imposed a mandatory $100 special assessment. (Oct. 29, 2014 Sentencing Transcript ("Sentencing Tr."), dated Jan. 8, 2019 [dkt. no. 249-1], Ex. B at 17-18).

    Petitioner argues that his counsel was ineffective on a number of grounds. For the following reasons, the Petition is

1

granted. Pursuant to 28 U.S.C. 2255(b), Petitioner shall appear before the Court for resentencing.

BACKGROUND

Petitioner Walsh and co-defendant Paul Greenwood were arrested on February 25, 2009, based on a criminal complaint. Thereafter, Indictment 09 Cr. 722 (MGC) was returned on July 24, 2009, charging Walsh with six counts. Count One charged Walsh with conspiracy to commit securities and wire fraud, in violation of 18 U.S.C. § 371. Count Two charged Walsh with securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 2401.10b-5, and 18 U.S.C. § 2. Count Three charged Walsh with commodities fraud, in violation of 7 U.S.C. §§ 6o(1) and 13(a)(2) and (5), and 18 U.S.C. § 2. Counts Four and Five charged Walsh with wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. Count Six charged Walsh with money laundering, in violation of 18 U.S.C. §§ 1957 and 2.

From October 2009 to May 2013, Walsh was represented by Mark Flessner, Esq., initially of Sonnenschein Nath & Rosenthal LLP ("Sonnenschein") and then of Holland & Knight LLP. Through February 2013, Walsh was also represented by Glenn Colton of Sonnenschein. On December 22, 2009, while represented by Flessner and Colton ("Monsanto Counsel"), Walsh moved to release $4.5 million in assets that had been frozen pursuant to related civil enforcement actions to pay for his legal fees. On March 9,

2010, the Court granted the release of $900,000 for Walsh to pay legal fees and expenses, unless the Government were to establish probable cause at a Monsanto hearing that such funds were tainted by fraud. The Government initially chose not to seek a Monsanto hearing. Following an application by Petitioner to release additional assets for his legal fees and expenses, beyond the $900,000, Judge Cedarbaum held a Monsanto hearing. On May 30, 2012, Judge Cedarbaum issued an order denying the requested relief. United States v. Greenwood, 865 F. Supp. 2d 444 (S.D.N.Y. 2012). On June 5, 2012, Judge Cedarbaum granted Walsh's request for a stay of the trial pending an interlocutory appeal of the May 30, 2012 order. On April 2, 2013, the Court of Appeals affirmed the district court's ruling. United States v. Walsh, 712 F.3d 119 (2d Cir. 2013).

From the outset of the case in 2009 through the Court of Appeals decision in 2013, Monsanto Counsel spent the $900,000 the Government agreed to release, plus an additional $500,000 — all in an attempt to gain release of more funds for attorneys' fees. (Pet. at 2-3). When the attempt proved unsuccessful, Monsanto Counsel withdrew.

Following the Monsanto hearing, Petitioner retained Justin Sher and Michael Tremonte ("Trial Counsel") and paid them a flat fee of $100,000. (Pet. Mot. at 13.) In February 2014, Trial Counsel informed Judge Cedarbaum that he wanted to schedule the

3

trial as far out as possible, based on delays in getting the record from Petitioner's prior attorney, his own schedule, and a general lack of resources at his firm. (Pet. Mot. at 16.)

On or about April 25, 2014, Petitioner appeared before Magistrate Judge Kevin Nathaniel Fox to plead guilty to Count Two of the Indictment, pursuant to a plea agreement with the Government. (Pet. Mot. at 19). Petitioner's plea agreement set forth the parties' position concerning the application of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") to his case. (Apr. 24, 2014 Plea Agreement, dated Mar. 19, 2018 [dkt. no. 259-1]. In the Plea Agreement, the parties stipulated that the Guidelines range would have been 360 months to life imprisonment in the absence of a statutory maximum sentence. (Id. at 3). This Guidelines range was based on an offense level of 42[1] and a criminal history category of I. (Id. at 2). Because the statutory maximum sentence for Count Two was 240

---

[1] The offense level of 42 was calculated as follows: The parties stipulated that the base offense level was 7 pursuant to U.S.S.G. § 2B1.1(a)(1). The offense level was increased by 30 levels because the amount of loss was more than $400,000,000. The offense level was increased by two levels because the offense involved 10 or more victims. The offense level was increased by two levels because the defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense. The offense level was increased by four levels because the defendant was associated with a registered broker dealer at the time he committed the offense. The offense level was then reduced by three acceptance of responsibility points.

months' imprisonment, the parties agreed that the Stipulated Guidelines Sentence was 240 months imprisonment. (Id. at 3). The Plea Agreement contained an appellate waiver provision, in which the Petitioner agreed not to file a direct appeal or a Section 2255 motion challenging any sentence equal to or below the Stipulated Guidelines Sentence of 240 months. (Id. at 4).

At the plea hearing, Petitioner confirmed that he understood the range of penalties, including the maximum sentence. He also agreed that the agreement "constrict[ed] [his] ability to appeal from or collaterally attack the judgment of conviction or sentence that might be imposed upon [him]." (Plea Tr. at 14).[2] He was not advised that he could not appeal any sentence at or below 20 years; he agreed only that "notwithstanding the analysis of the guidelines in the" Plea

---

[2] THE COURT:  There is also text in the April 24, 2014 writing that constricts your ability to seek a sentence to appeal from or collaterally attack the judgment of conviction or sentence that might be imposed upon you and, also, restricts your ability to seek a sentence modification, pursuant to Title 18, United States Code, Section 3582(c).
    Are you aware of that, sir?
THE DEFENDANT: Yes, sir.  (Plea Tr. 14:10-17).
    Trial counsel testified that "Magistrate Fox told Mr. Walsh that the plea agreement 'constricts [Mr. Walsh's] ability to appeal from or collaterally attack the judgment of conviction or sentence.'  I did not comment on this at the plea hearing, even though I knew that Judge Fox's formulation understated the effect of the appellate waiver in the plea agreement, which in fact foreclosed nearly all avenues of appealing from any sentence within the statutory range."  (Declaration of Michael Tremonte ("Tremonte Decl."), dated Jan. 21, 2019 [Government Exhibit ("GX") 1007], at ¶ 19).

Agreement, sentencing is ultimately up to the sentencing judge. (Id.) Petitioner also did not allocute to the loss amount.

Magistrate Judge Fox confirmed that Petitioner had reviewed the Plea Agreement with his attorney, that he understood all of the terms of the Plea Agreement, and that he had voluntarily signed the Agreement. (Plea Tr. 12).

Following Petitioner's guilty plea, the United States Probation Office prepared the Presentence Investigation Report ("PSR") that included the Guidelines calculation for the offense. This calculation was the same as the Guidelines sentence agreed to by the parties in the Plea Agreement. Ultimately, the Probation Office recommended a sentence of 20 years imprisonment. (PSR Addendum at 28-30 [GX 1003]).

The instant Petition was filed on August 30, 2017, and an evidentiary hearing was held on March 18, 2019. At the hearing, Petitioner Walsh and Trial Counsel Tremonte testified.

### THE RECORD

Trial Counsel had entered into plea negotiations with the Government in April of 2014. (Tremonte Decl. ¶ 11). Petitioner argues that Trial Counsel provided ineffective assistance of counsel by failing to advise him adequately on whether to plead guilty or not, to wit, whether or not he should plead to a stipulated guidelines range of 240 months, the statutory

6

maximum, and waive his right to appeal a sentence at or below that level.

According to Petitioner, "[w]ith no discussion about a defense, [Trial Counsel] pressed [him] to plead guilty and advised him he would be sentenced in the single digits." (Pet. Mot. at 6.) Petitioner says that Trial Counsel told him that "he would never get anywhere near 20 years and that Judge Cedarbaum would 'read between the lines.'" (Id.; see also Declaration of Stephen Walsh, dated August 27, 2017 [dkt. no. 250] at ¶¶ 3, 37).

Trial Counsel testified that he told Petitioner that he "did not expect that [Petitioner] would get a 20-year sentence, (Mar. 18, 2019 Transcript ("Mar. 18, 2019 Tr."), dated Mar. 29, 2019 [dkt. no. 21 (17-CV-6651)], at 127:3-5, 9-19), and that if he got a five-to-seven-year sentence, it would be a "home run." (Id. 169:7-11; see also Tremonte Decl. ¶ 15 ("However, I emphasized that I did not expect Judge Cedarbaum to impose a sentence near the twenty-year maximum.")).

Trial Counsel testified that his office and Petitioner consulted with Joel Sickler, a Bureau of Prisons consultant, about an appropriate designation for Petitioner. (Tremonte Decl. 20; Mar. 18, 2019 Tr. 169:14-19). He also acknowledged that, when consulting with such an expert, "it would make sense to give this expert a sense of what kind of sentence you might be

7

anticipating, so that he could gear his research to the amount of time the person might be facing." (Mar. 18, 2019 Tr. 170:20-171:5.) Trial Counsel also conceded that he or someone at his firm told Sickler (and Mr. Walsh) that they hoped the sentence would be in the single digits. (Mar. 18, 2019 Tr. 183: 25-184: 7). After reading the PSR, which recommended a 20-year sentence, (Mar. 18, 2019 Tr. 172: 14-17), Mr. Sickler provided recommendations for institutions at the 24-to-36-month range, the 36 to approximately-50-month range, and 120 months. ((Mar. 18, 2019 Tr. 171:19-172:13); see also Mar. 18, 2019 Hearing, Pet. Ex. 10; Tremonte Decl. ¶ 22).

Based on Petitioner's demeanor on the stand and all of the evidence in the record, the Court credits Petitioner's testimony that Trial Counsel told him that there was no way he could get anywhere near a 20-year sentence. (Mar. 18, 2019 Tr. 97:15-16).

As noted above, Petitioner's Plea Agreement stipulated to a loss amount of $440 million. Petitioner asserts that he questioned Trial Counsel about the high loss figure when the Plea Agreement was finally explained to him, and that Trial Counsel told him that the number was so high "it did not matter." (Pet. Mot. at 26.) Petitioner says that Trial Counsel told him "all along" that a 20-year sentence was a "hypothetical situation," and indicated that Trial Counsel had an agreement

with the Government to this effect. (Mar. 18, 2019 Tr. 36:14-23.)

While the parties stipulated to the $440 million figure as the loss amount, the parties also stipulated to a loss amount "fairly attributable to this defendant" in the amount of $50,743,779. (Pet. Mot. at 33-34 n.15). Petitioner argues that this number fairly represents the loss amount. (Id.)

At sentencing, the parties made the usual arguments, but Trial Counsel also pointed out that the case was "extremely unusual" because the investors were projected to recover more than 99 percent of their principal investments and because Walsh and his co-conspirators invested some of the victims' funds in "real viable assets." (Sentencing Tr. 9-11). In finding that the Guidelines Sentence of 240 months was appropriate, Judge Cedarbaum noted, incorrectly,[3] that "many, many people had their money, in effect, stolen by misrepresentations as to what they would receive in exchange for their money." (Sentencing Tr. at 17).

After imposing a sentence of 20 years' imprisonment, Judge Cedarbaum initially advised Walsh that he had the right to

---

[3] Greenwood was sentenced just after Walsh and on the same underlying record, and he appealed. Because Judge Cedarbaum had premised the sentence on "victims' losses that were unsupported by the record," the Court of Appeals vacated Greenwood's sentence on a plain error basis. United States v. Greenwood, 627 F. App'x 33 (2d Cir. 2016).

9

appeal, after which Trial Counsel pointed out that Petitioner had in fact waived his right to appeal a sentence of 20 years imprisonment or less in his plea agreement. (Sentencing Tr. 19, 21-23). In light of the appellate waiver, Trial Counsel argued that he did not "think anyone really expected that we would be at the outer range of the hypothetical guidelines sentence" and "that there is not another case, even remotely like it, where a 20-year sentence has been imposed." (Plea Proceeding at 45). Trial Counsel then asked again for the extra day on the sentence, suggesting that "[i]t's really just a matter of one additional day to the sentence" and would be "in the spirit of the agreement." (Id. at 46.) Judge Cedarbaum declined but noted that if Petitioner "wants to withdraw his plea, I will consider that." (Sentencing Tr. at 26). Trial Counsel then asked for a "brief adjournment so that we may do some research to determine whether or not the best course, and the appropriate course, is to withdraw the plea." (Id.) The Court agreed to a six days' adjournment, by which time Trial Counsel was instructed to advise the Court as to whether Walsh would be filing a motion to withdraw his guilty plea. (Sentencing Tr. at 28).

By letter filed on November 4, 2014 (attached to the Petition as Exhibit E), Trial Counsel stated that Walsh "will not be moving to withdraw his plea" and requested that "the Court hear further argument on the appropriate sentence in this

case." On November 19, 2014, the Court denied the application. Also on November 19, 2014, the Court filed the judgment of conviction, which stated that the judgment had been imposed on October 29, 2014 (the same day as Walsh's sentencing proceeding) and reported the orally imposed sentence of 240 months imprisonment, followed by three years' supervised release.

Petitioner filed a notice of appeal on November 25, 2014. On appeal, Petitioner argued that his sentence should be vacated because it was imposed without a public proceeding and without his presence. On April 26, 2016, the Court of Appeals issued a summary order denying Petitioner's appeal and affirming the district court's judgment. On June 29, 2016, Walsh filed a petition for panel rehearing, or, in the alternative, for rehearing en banc, which was denied on September 2, 2016.

## LEGAL STANDARD

To prevail on a claim of ineffective assistance of counsel, a defendant must overcome the "strong presumption" that his counsel's conduct was reasonable and show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 687-90 (1984). The defendant must do more than "show that the errors had some conceivable effect on the outcome of the proceeding." Id.; see also United States v. Acevedo, 229 F.3d 350, 356 (2d Cir. 2000).

11

The defendant must also "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Only if the defendant meets his burden on both of these elements may a reviewing court conclude that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that the defendant was, as a result, deprived of a fair proceeding. Strickland, 466 U.S. at 687.

To prevail on a claim of ineffective assistance of counsel in connection with a plea offer, a defendant must show that counsel's performance was deficient and that he was prejudiced thereby. See Lafler v. Cooper, 566 U.S. 156, 163 (2012). Where the defendant says he was mislead by his counsel about the sentence he would receive, the critical question is whether he was "'aware of the actual sentencing possibilities and, if not, whether accurate information would have made any difference in his decision to enter a plea.'" Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992) (quoting Hunter v. Fogg, 616 F.2d 55, 58 (2d Cir. 1980)).

## DISCUSSION

As noted above, Petitioner has made a variety of arguments in support of his Petition; first, that Monsanto counsel allegedly acted on the basis of financial conflicts of interest;

second, that Trial Counsel was ineffective because of a financial conflict of interest and for failing to render reasonably competent advice; third, that the plea was involuntary. (Pet. Mot. at 38-43.)

In additional briefing, Petitioner asserts Trial Counsel (1) agreed to a complete waiver of appeal without properly informing Petitioner, (2) "waived" Petitioner's opportunity to move to withdraw his plea when he was sentenced to the statutory maximum, (3) agreed to a "draconian plea" and to an unreal loss amount, showing that counsel was not prepared to go to trial, and (4) failed to take steps to notify the Chief Judge of the Circuit of concerns over Judge Cedarbaum's health. (Petitioner Letter ("Pet. Mar. 26 Ltr."), dated March 26, 2019 [dkt. no. 292] at 1.)

At this time, the Court will consider Petitioner's arguments that Trial Counsel was ineffective in rendering advice regarding the appeal waiver in the plea agreement because the plea agreement was not supported by consideration.

Based on United States v. Lutchman, 910 F.3d 33, 38 (2d Cir. 2018), Petitioner argues that his appeal waiver was without consideration, and based on Garza v. Idaho, 139 S. Ct. 738 (2019), he argues that this lack of consideration evinces a constitutionally deficient performance that is per se

13

prejudicial under Strickland. (Petitioner Letter ("Pet. Mar. 11 Ltr."), dated March 11, 2019 [dkt no. 279], at 3-6.)

In Lutchman, the Court of Appeals held that an appeal waiver not supported by consideration does not act as a bar to appeal. Lutchman, 910 F.3d at 38. In that case, defendant pleaded guilty and waived any right to appeal a sentence less than the statutory maximum. Id. at 37. He was then sentenced to the statutory maximum.

The Government responds in two ways. Initially, while not discussing Lutchman, it argues that this argument should be rejected because it was not raised in the § 2255 petition. (Government's Post-Hearing Memorandum Of Law In Opposition ("Gov. Opp."), dated Apr. 2, 2019 [dkt. no. 291], at 19.) As a threshold matter, the instant Petition was filed prior to the decisions in Lutchman and Garza. Defense counsel informed the Court by letter, responded to by the Government, of their views of the two cases shortly after Garza was decided. Given the relevance of the cases and counsel's timeliness in apprising the Court of their supplemental arguments, the Court will entertain the arguments as to the ineffectiveness of trial and appellate counsel.

Next, on the merits, the Government responds that the instant waiver was supported by consideration. It points to the capping of the Guidelines range from 360 months to 240 months to

14

life, a three-level reduction in his Guidelines offense level, and barring the Government from prosecuting Petitioner for any non-tax crimes. (Gov. Opp. at 5, Government March 11 Letter ("Gov. Mar. 11 Ltr."), dated Mar. 11, 2019 [dkt. no. 281], at 2.)

Capping the Guidelines range was not consideration in this instance as the Guidelines themselves lower any range over the statutory maximum range to the statutory maximum. U.S.S.G § 5G1.1(a). Further, the capping of the Guidelines range was a function of the statutory maximum, not some beneficence on the part of the Government. The three-level reduction was not consideration because it did not reduce the Guidelines range below the statutory maximum.

The Government argues that its agreement not to pursue additional charges against Petitioner also constitutes consideration. However, the Government does not assert that it was pursuing any investigations outside the scope of the indictment, so any suggestion of consideration on this point is illusory.

Finally, the Government argues that Walsh received consideration for his plea because he was allowed to plead to one count instead of all six, (Gov. Mar. 11 Ltr. at 2; Government April 12 letter ("Gov. Apr. 12 Ltr."), dated April 12, 2019 [dkt. no. 295]), lowering the statutory maximum.

15

However, because consecutive terms of imprisonment were highly unlikely in this case, the Court agrees with Petitioner that "[p]rotecting him from that possibility bestowed on him no substantive benefit."  (Petitioner Second Letter ("Pet. Second Mar. 11 Ltr."), dated March 11, 2019 [dkt. no. 283], at 6).

Petitioner also argues that his writ should be granted based on Garza, 139 S. Ct. at 738.  The prejudice requirement of Strickland is presumed in certain Sixth Amendment contexts, such as "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken."  Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000).  In Garza, the Supreme Court held that this presumption of prejudice applies even when the defendant has signed an appeal waiver.  Garza, 139 S. Ct. at 744.

The Government responds that the case is different because there was an actual appeal taken here.  (Gov. Mar. 11 Ltr. at 1).  Petitioner replies that the appeal was not on the merits and that appellate counsel "did not challenge the sentence, but argued only that there had been no sentence imposed."  (Pet. Mar. 26 Ltr. at 5).

Petitioner is correct; appellate counsel sought to avoid the appeal waiver by arguing that the sentence imposed by Judge Cedarbaum had not been in accordance with law because it had not been imposed in open court and thus was illegal.  Appellate

16

counsel wrote: "Walsh was not sentenced on October 29." (Reply Brief for Defendant-Appellant, United States v. Walsh, 2016 WL 313373 (No. 14-4420-cr) (2d Cir. 2016), at *3).

Appellate counsel acknowledged the appeal waiver and specifically stated that Walsh "challenges only the in camera manner in which his sentence was imposed." (Brief for Defendant-Appellant, United States v. Walsh, (No. 14-4420-cr) 2015 WL 5521967 (2d. Cir. 2015), at *20). Appellate counsel continued, making it clear that Walsh "does not contest the sentence's length, substance, or the method by which is was devised." (Id.) Counsel thus (ineffectively) failed to disclaim the plea agreement's waiver provision entirely and instead accepted the waiver and specifically disclaimed an appeal of "the sentence."

The Court of Appeals denied Petitioner's claim that he was sentenced in camera in violation of the Fifth and Sixth Amendments. United States v. Walsh, 647 F. App'x 34, 35 (2d Cir. 2016).

The Supreme Court limited its holding in Garza by stating that, while it was not addressing "what constitutes a defendant's breach of an appeal waiver or any responsibility counsel may have to discuss the potential consequences of such a breach, it should be clear . . . that simply filing a notice of appeal does not necessarily breach a plea agreement, given the

17

possibility that the defendant will end up raising claims beyond the waiver's scope." Garza, 139 S. Ct. at 746.

There is no doubt that appellate counsel here filed a notice of appeal, clearing at least the outer bounds set by the Supreme Court. But this Court need not reach the question of what kind of appeal a defendant is entitled to because the Court accepts Petitioner's invitation to construe his papers to include an ineffective assistance of appellate counsel claim. (Pet. Second Mar. 11 Ltr. at 2). Ineffective assistance of trial counsel claims cannot be waived, and they were not briefed by Petitioner's appellate counsel. "Most fundamentally, courts agree that defendants retain the right to challenge whether the waiver itself was knowing and voluntary." Garza, 139 S. Ct. at 745 (2019).

Here, the Court is convinced that Petitioner was not effectively represented twice – once when the appeal waiver was effected without consideration and again when this waiver was not raised by appellate counsel.

In light of the above finding, the Court need not address the other claims advanced by Petitioner, including but not limited to claims relating to Judge Cedarbaum's health, Petitioner's subjective understanding of the term "constrict" with respect to his appellate rights, disputes relating to the relevant loss amounts, whether the Petitioner knowingly declined

18

Judge Cedarbaum's offer to allow him to withdraw his plea, and Petitioner's counsel's financial conflicts of interest.

CONCLUSION

The Petition for a writ pursuant to 28 U.S.C. § 2255 [dkt. no. 249] is granted. Pursuant to 28 U.S.C. § 2255(b), Petitioner shall appear before the Court for resentencing. The parties shall contact the Court's Courtroom Deputy at 212-805-0116 for a date.

SO ORDERED.

Dated:   New York, New York
         April 25, 2019

                          _____
                          LORETTA A. PRESKA
                          Senior United States District Judge